**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRANCE MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-02617 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant's motion to dismiss the second amended complaint [64] is granted. Plaintiff's second amended complaint [63] is dismissed without prejudice. Mann is granted leave to submit a third amended complaint by 10/21/2026, if he can do so consistent with this Order and the requirements of Fed. R. Civ. P. 11. If Mann declines to file a third amended complaint by 10/21/2026, the Court will dismiss the case with prejudice and enter judgment in favor of Defendant. See the accompanying Statement for details.

**STATEMENT**

Plaintiff Terrance Mann alleges that he was subjected to a racially insensitive remark while employed by the City of Chicago ("City"). He complained about the comment to the City, allegedly against the advice of his union representative, and was eventually fired. Mann then sued both the City and his union, Defendant International Association of Machinists and Aerospace Workers Local Lodge 126 ("Union"). Having settled with the City, Mann continues to pursue claims against the Union for racial discrimination, pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Before the Court is the Union's motion to dismiss Mann's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Union's motion is granted.

## I. Background

For purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the SAC and views those facts in the light most favorable to Mann as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Mann's SAC alleges as follows.

From February 16, 2023, until October 20, 2023, Mann worked for the City as a Water Machinist. (SAC ¶¶ 16, 48, Dkt. No. 63.) At all relevant times, the Union and the City were bound by a collective bargaining agreement ("CBA"). (*Id.* ¶ 25.); *see also* CBA 1, https://www.chicago.gov/content/dam/city/depts/dol/Collective%20Bargaining%20Agreements/B

U-36-Machinists-and-Aerospace-Workers-Local-126-CBA-2022-2027-Final.pdf.[1] The CBA prohibits both the City and the Union from engaging in unlawful racial discrimination. (SAC ¶ 27.) While employed by the City, Mann, an African American, was a dues-paying member of the Union. (*Id.* ¶¶ 17, 19.) On September 22, 2023, a White co-worker, Billy, told Mann to move from a bench by saying: "Get your Black a** off that bench."[2] (*Id.* ¶¶ 20–21.)

Insulted and disturbed, Mann reached out to the Union regarding the comment. (*Id.* ¶ 23.) But Mann's Union representative, Lenny Cabrera, discouraged him from filing a complaint, allegedly cautioning Mann that doing so could lead to termination. (*Id.* ¶ 32.) Cabrera advised Mann to leave the matter concerning Billy untouched. (*Id.*) Despite Cabrera's discouragement, on September 23, 2023, the day after the incident, Mann reported the offensive comment to a manager for the City. (*Id.* ¶ 41.) Mann was told that the City would investigate, but no one from the City's management or human resources department ever gave him any paperwork to fill out regarding Billy. (*Id.* ¶ 42.)

The City took no remedial measures or actions related to the incident. (*Id.* ¶ 47.) Then, weeks after complaining to the City, Mann received a letter dated October 11, 2023, notifying him that his employment would be terminated effective October 20, 2023. (*Id.* ¶ 48.)

Following his termination, Mann filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 8.) He subsequently received a Notice of Right to Sue. (*Id.* ¶ 9.) Within 90 days of receiving the Notice of Right to Sue, on April 2, 2024, Mann filed his original Complaint, suing the City and the Union. (Dkt. No. 1.) Both Defendants moved to dismiss the Complaint, and Mann responded by filing an Amended Complaint. (Dkt. No. 23). Mann and the City then reached a settlement; accordingly, the City was dismissed as a Defendant. (Dkt. Nos. 62.) Mann subsequently filed the SAC on March 27, 2025, alleging violations of § 1981 and Title VII. (Dkt. No. 63.)

## II. Discussion

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation marks omitted).

---

[1] The CBA is referenced repeatedly in the SAC and is central to Mann's claims. For a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[2] Per the SAC, the co-worker's last name is unknown. Here, the Court refers to him simply as "Billy."

The Union makes two arguments for dismissal. First, it argues that the SAC's Title VII claim is time-barred because it asserts new claims against the Union that were not raised within 90 days of the EEOC issuing Mann his Notice of Right to Sue. Second, the Union argues that the discrimination claims in the SAC are inadequately pleaded.

### A. Timeliness

"In order to bring suit under Title VII, a plaintiff must generally file the complaint within 90 days of receipt of the notice of right-to-sue letter." *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 49 (7th Cir. 1984). The SAC was filed over a year after Mann received his Notice of Right to Sue. As a result, the SAC is timely only if it relates back to the date of the original Complaint, which was timely filed. The original Complaint and the Amended Complaint both advanced a "joint employer" theory of the Union's liability under Title VII. (Compl. ¶ 6; Am. Compl. ¶ 6.) In the SAC, Mann abandons that theory and instead asserts a claim under Title VII's prohibition on discrimination by a labor organization, 42 U.S.C. § 2000e-2(c). In doing so, Mann adds new allegations to the SAC that were not present in the earlier complaints. The Union argues that the SAC presents a new legal theory, based on a different statutory provision, and, most importantly, an entirely new set of factual allegations. Therefore, the Union asserts that the SAC does not relate back to the original Complaint, making the SAC's Title VII claim untimely.

"Under Federal Rule of Civil Procedure 15(c), an amended complaint relates back to the date of the original pleading 'whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth . . . in the original pleading.'" *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 (7th Cir. 1989) (quoting Fed. R. Civ. P. 15(c)), *aff'd*, 494 U.S. 820 (1990). "[T]he same substantive legal theory need not be alleged in both complaints; rather the claims need only arise out of the same conduct, transaction or occurrence." *Id.* (internal quotation marks omitted); *see also Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) (noting that relation back is permitted "where an amended complaint asserts a new claim on the basis of the same core of facts").

The Union suggests that relation back under Rule 15(c) only applies when the facts and circumstances are identical across the old and new complaints. That is incorrect. Certainly, an amended complaint relates back to the original complaint when the facts and circumstances are identical. *Donnelly*, 874 F.2d at 410. However, courts also allow amended complaints containing new factual allegations to relate back, so long as those new allegations "all arise out of the same core factual allegations as in the original complaint." *Ferkel v. Bd. of Educ. of City of Chi.*, 45 F. Supp. 3d 824, 831 (N.D. Ill. 2014) (rejecting an objection that new allegations present "new ***facts***, not new substantive ***claims***" as "too technical"). Put simply, "a claim adding new factual allegations may relate back to the original pleadings where a sufficiently close relationship exists between the original and the new claims. In such a case, the allegations all relate to the same transaction out of which the litigation arose, and Rule 15(c)'s notice requirements are met." *In re Olympia Brewing Co. Sec. Litig.*, 612 F. Supp. 1370, 1373 (N.D. Ill. 1985).

That standard is met here. The Union is correct that the SAC adds many paragraphs of new allegations and proceeds on a different legal theory. However, the core factual allegations are consistent across the complaints. As alleged in all three complaints, Mann experienced a racial slight, was discouraged from complaining by Cabrera, and when he did complain, was ultimately

fired by the City. Most of the "new allegations go to the legal elements of" Mann's labor organization discrimination claim "but do not change the underlying conduct, transaction or occurrence alleged in the original Complaint." *Vorgias v. Mem'l Health Sys., Inc.*, No. 12-CV-218, 2012 WL 5947773, at *6 (N.D. Ind. Nov. 27, 2012) (internal quotation marks omitted). Accordingly, the requirements of Rule 15(c) are satisfied, and the SAC relates back to the date of the original Complaint. Mann's Title VII claim is not time-barred.

**B. Sufficiency of Racial Discrimination Claims**

Count I of the SAC alleges race-based discrimination in violation of § 1981. Count II alleges the same in violation of Title VII. "A § 1981 claim may be brought against a labor organization . . . when the collective bargaining agreement contains an express clause binding both the employer and the union not to discriminate on racial grounds, . . . and when the labor organization as the collective bargaining agent intentionally avoids asserting discrimination-based claims." *Majeske v. Fraternal Ord. of Police, Loc. Lodge No. 7*, 94 F.3d 307, 312 (7th Cir. 1996) (internal quotation marks omitted). Similarly, under Title VII, it is "an unlawful employment practice for a labor organization . . . to discriminate against[] any individual because of his race." § 2000e-2(c). "The union is . . . the workers' agent in dealing with the company. If it discriminates in the performance of its agency function, it violates Title VII, but not otherwise." *E.E.O.C. v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). Both statutes prohibit a union from discriminating in fulfilling its role as the employee's agent. Thus, "[t]he Seventh Circuit 'generally use[s] the same standards to review discrimination . . . claims under § 1981 and Title VII.'" *Buford v. Laborers' Int'l Union Loc. 269*, No. 16 C 10218, 2019 WL 184052, at *7 (N.D. Ill. Jan. 14, 2019) (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)), *aff'd*, 787 F. App'x 341 (7th Cir. 2019). Accordingly, the Court analyzes both claims together.

"[U]nions [do not] have an affirmative duty to prevent racial harassment or other forms of unlawful discrimination in the workplace." *Pipefitters Ass'n Loc. Union 597*, 334 F.3d at 661. And significant here, a "claim against a labor organization under [Title VII] does not depend on showing that either the employer or the union violated any state statute or contract." *Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1107 (7th Cir. 2014). *Contra Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir. 1985) (stating that establishing a prima facie Title VII claim requires showing that the employer "violated the collective bargaining agreement with respect to the plaintiffs . . . [and] the Union permitted the breach to go unrepaired"). Rather, an employee may recover against his union under Title VII's labor organization provision if, and only if, it discriminates against him "when performing union functions, such as job referrals," *Johnson v. International Longshoreman's Association, Local 815 AFL-CIO*, 520 F. App'x 452, 454 (7th Cir. 2013), or processing grievances, *Green*, 740 F.3d at 1107.

Mann fails to state a claim because he does not allege that the Union discriminated against him in performing a union function. The SAC is premised on the Union's failure to help Mann redress Billy's racial comment. The core question is whether the allegations show that, after learning of Billy's comment, the Union failed to do something for Mann because he is Black that it would have done for a White member. *Green*, 740 F.3d at 1107 ("If the union would have

processed [the plaintiff's] grievance or represented him under the Tenure Act had he been white . . . then the union violated Title VII.").

Mann alleges that the Union took no action to support him after Billy's remark. But Mann does not allege that he ever asked the Union to initiate a formal grievance on his behalf. The absence of that allegation dooms his claims because "inaction, unless invidious, is not discrimination in any accepted sense of the term." *Pipefitters Ass'n Loc. Union 597*, 334 F.3d at 660. As the Seventh Circuit explained in *Pipefitters*,

> Suppose that a union is lackluster, and while it will file a grievance if pressed to do so by a member of the collective bargaining unit, it will do nothing on its own initiative. We do not understand how such passivity, though it means the union will not take measures to prevent racial harassment on its own initiative, could be thought a form of racial discrimination . . . .

*Id.*

In this case, as alleged, Mann did not press the Union to file a grievance. But the SAC does state that Mann complained to his union representative, Cabrera, about Billy's comment. Mann argues that Cabrera's alleged discouragement of a complaint to the City about Billy is enough to sustain his discrimination claims. But Cabrera's statement is not equivalent to the Union refusing to pursue Mann's grievance. Under the CBA, the grievance process is a formal procedure that requires the employee or the Union to submit the grievance in writing and follow specified steps. CBA 58–67 (establishing CBA grievance process). The CBA also notes that, prior to initiating a formal grievance, "the employee may discuss the matter with [their] immediate supervisor." *Id.* at 59. In doing so, the CBA highlights the common-sense distinction between the formal grievance process—a union function—and an employee directly raising a complaint to his employer. The latter does not implicate the Union qua union. That Cabrera discouraged Mann from complaining to the City about Billy says nothing about whether (1) Mann sought to invoke the CBA's grievance procedure, (2) the Union refused, or (3) any refusal was based on Mann's race. Accordingly, that factual allegation, standing alone, cannot support a claim of discrimination by the Union.

Aside from conclusory assertions of racial animus, no other factual allegations in the SAC plausibly support Mann's claims. *See Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true."). Mann repeatedly alleges that the "Union did not assist Plaintiff," even though "Plaintiff had requested assistance from and representation by the Union as of the date he was fired." (SAC ¶¶ 43, 50.) Mann asserts that by failing to "assist" and "represent" him, the Union violated provisions of the CBA. As discussed above, a violation of the CBA is not essential to a claim of racial discrimination by the Union. *Green*, 740 F.3d at 1107. More importantly, these allegations are vague and conclusory. They fail to identify a union function that the Union performed, or failed to perform, discriminatorily. There are simply no factual allegations in the SAC indicating what form of assistance the Union, as Mann's agent, was meant to provide for him.

Moreover, because Mann had been employed for fewer than twelve months, he was a probationary employee subject to § 8.4 of the CBA. CBA 32. Contrary to Mann's assertions, § 8.4

of the CBA did not obligate the Union to provide him with representation prior to his discharge. *See* CBA 32 (providing that, in the case of a disciplinary ***suspension*** without pay, the Union and the employee are entitled to notice and, at the Union's election, an opportunity to be heard; otherwise, probationary employees are at-will employees who may be disciplined or discharged at the City's exclusive determination). Contrary to Mann's assertion, there is nothing ambiguous about this provision of the CBA, which refers specifically to disciplinary suspensions. *See Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987) ("A term is ambiguous if it is subject to more than one reasonable interpretation."). And Mann was never subject to suspension. Aside from representation in a disciplinary suspension meeting, not relevant here, it is not clear what kind of representation the Union failed to provide. Accordingly, Mann's vague and conclusory allegations do not suggest a union function that the Union failed to perform.

Further, Mann "alleges no facts," again aside from pure legal conclusions, "connecting [any alleged] deprivation to a discriminatory motive." *Diallo v. 50 E. Chestnut Condo Ass'n*, No. 23-CV-13985, 2026 WL 958557, at *6 (N.D. Ill. Apr. 9, 2026). For all the reasons discussed above, Mann has failed to state a claim for race-based discrimination under either § 1981 or Title VII.

## III. Conclusion

The Union's motion to dismiss (Dkt. No. 64) is granted. The SAC is dismissed without prejudice. This is the first time the merits of the claims against the Union have been addressed by a ruling from the Court. As a result, the Court grants Mann one final opportunity to amend his complaint to attempt to state a claim. Mann is granted leave to file a third amended complaint, if he is able to do so consistent with this Order and the requirements of Federal Rule of Civil Procedure 11, by October 21, 2026.

Dated: September 23, 2026

Andrea R. Wood
United States District Judge